All right. I think we have missing someone. Is somebody not coming? No. She's here. No. We didn't realize. We thought everyone was in the courtroom. Our light was on. It's okay. No, you're all right. Not a problem. We saw the green light and we reacted reflexively. It tells us it's okay. We're just like monkeys in a cage. And you tricked us by stepping out. I'm sorry about that. Not at all. All right. This is in re the marriage of Mueller. And for the appellant, Ms. Moran. And for the athlete, Ms. Blackburn. You may proceed. Thank you, your honor. May it please the court, counsel. I guess in the run-of-the-mill divorce case, you're standing here and you have your client standing behind you. And obviously they're very interested in the outcome of this case. In this situation, it's one of those rare cases where I literally have thousands of people standing on this side of the aisle. People who work for the state of Illinois, federal employees in this state, policemen, firemen. Who all are in the same situation when they're involved in a dissolution of marriage. And have a spouse on the other side who works in private employment or employment that's subject to social security. The issue in this case has been before this court before in the Crook matter. The Supreme Court in Crook found in that instance where a trial judge had adjusted property that was awarded to each party. According to what he found were the equities and the amount of social security benefits that they were going to receive. Crook said that sounds too much to us like the decision in Hiscadero. And so they overruled this court. But they cited to the cases, many of which we have relied upon in our briefs and making our argument here. And said nobody's argued the situation in those cases. Therefore, we'll leave it open for another day. In this case then, we have an open issue of law that our Supreme Court hasn't decided, which is very important. So I don't forget, I'm going to first tell you that there are two issues in this case. The first one is an evidentiary issue. Our expert witness testified at hearing before the trial court concerning her report, her methods that she used. And the trial court excluded that evidence in essence saying that it was inadmissible to the proceeding. And we believe that's a mistake. The court made that ruling on the basis of law, the Crook decision, which we'll argue is not applicable here. So we believe it's a de novo review of that decision. But regardless of whether you look at it. Well, if Crook, if we think Crook was correctly decided, then the trial judge was correct in his ruling regarding the expert, wasn't he? Well, he doesn't have to weight on it. But the evidence is certainly material. It's relevant. Nobody challenged. What difference does it make? That is, if he says we have to follow the decision of the Supreme Court of Illinois that says this stuff, we can't affect social security stuff. None of that expert testimony matters, does it? But the Supreme Court said it's an open question. That's not my question, counsel. If we agree that Crook was correctly interpreted by the trial court and forbids what you're requesting us to do, then his evidentiary ruling would be correct because the evidence is irrelevant, isn't it? But he's comparing apples and oranges. He's comparing two entirely different animals. In Crook, we had a trial judge that adjusted property up and down. In this case, we have presented a valuation argument through our expert that has not been thrown out by any court in this state. Therefore, it is relevant to those issues. It is material. And these issues cannot be decided without that evidence. Again, materiality, up and down, how much weight you're going to give that evidence is obviously in play. But in this case, we believe it was a mistake for him to exclude that evidence. And we would ask the court to reverse that decision. As far as the pension decision, my job is somewhat easier here than it would have been a month ago because the Oregon Supreme Court has issued its decision in Herald v. Steadman. Read the decision again this morning, and it essentially is a treatise on this issue that covers every point from federal preemption to equitable distribution of property to whether or not the valuation was done correctly in this case. I spoke to the woman who handled that case this morning, and a petition for cert has not been filed as of yet in that case, and no motion for rehearing has been filed. Therefore, that case stands as good law, at least in the state of Oregon. The decision is based on an interpretation of Section 407A of the Social Security Act, which is going to be the basis of the decision in this appeal that states, the right of any person to any future payment under this subchapter shall not be transferable or assignable at law or in equity. That's the first part. In this case, no portion of Shelly Mueller's Social Security benefits are being assigned to anybody. They're not being transferred to anybody. They weren't even considered in this case. They didn't look at the amount of the benefits. The only fact they looked at was the fact that she would have income that would be shielded from purview of the divorce court. It then goes on to say, and none of the monies paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process. Here, we don't have an execution, don't have a levy, no attachment, no garnishment. The only possible argument that could be made is that this would be some other legal process. If you look at the Herald decision, they talk about that issue in great detail and cite the rule of statutory interpretation that if you have a list of specific items followed by a very general item, that the general item has to be in the nature of the preceding issues. In this case, there is nothing close to a levy, attachment, garnishment, or other legal process. The statute related to Social Security does not say that a trial court or a legal process cannot have any consideration of Social Security. All it says is that it can't do these things, levy, attachment, garnishment, or other legal process. In this case, when you look at the entire body of case law, from the United States Supreme Court decision all the way down to trial court decisions, I have not seen one source that says that this circumstance is fair, a good deal, and reasonable. Everybody says it's terrible. It's horrible. Some people argue that Congress is going to have to act in this instance, but as the Supreme Court in Oregon found, it's not necessarily a requirement here. If we are going to have an equitable, reasonable, and just distribution of property, which we are required to do in Illinois, there has to be a way around this. It's just not fair, what is happening to my client, that his ex-wife gets to shield this income. There's the argument that people say, well, Congress could change Social Security at any time. They could eliminate those benefits. I think we can all look at the history of what happens when even one candidate says that he or she says that Social Security should be cut or eliminated. The whole country goes up in arms. And I don't think there's a realistic probability that Social Security is going to be done away with, or that the benefits are going to be severely curtailed at any time in the future, especially in relation to these people here. If you look at the case law, I, at the trial court, tried to focus on the Supreme Court decision from Arizona in the Kelly case, which came out in the year 2000. It actually goes all the way back to the Kornbleth case in Pennsylvania in 1990. We've had at least one state where this valuation approach has been in place for at least 24 years now. And there's a whole host of other states, including Ohio, Arizona, Oregon, Washington State, and Maine, that all have the same reasoning in place. None of those decisions have been overturned. In this case, I think it's important to recognize that if you reverse the trial court's decision, Shelly Mueller is still going to receive her Social Security benefits. She's going to receive every dime of it that she's entitled to, and that's fair. Her benefits are protected. In this case, the only place that we're looking for some relief is in the valuation of Lt. Mueller's pension. Now, does it make a big difference? Yeah, it does. In this case, it's $377,000 worth of present-day value that's on the table here. That's a huge amount to my client. It's inarguable. But he has worked all through the marriage without the benefit of Social Security. If you look at the Kornbleth decision, it talks about the inequitable nature of this situation being a double blow. And what the court in Pennsylvania said, in contrast, an individual who was a civil service participant for many years will, if the trial court's approach is approved, be dealt a double blow of sorts. The pension will become part of the marital estate and thus divided, yet there will be no Social Security benefit to cushion this financial pitfall. The situation is exacerbated, thus providing a second blow, in that the money that would, in a conventional setting, be routed into Social Security, and thus into an exempt status, would either have been consumed by the couple, thus providing previous benefits enjoyed by both, or perhaps routed into the civil service pension or another retirement type of vehicle, which of course would then be included in the marital estate. In either scenario, a substantial stream of income, which would be used to finance a future Social Security benefit, which for most individuals is excluded from equitable distribution, is not similarly shielded for the civil service participant. Thus, that participant is at a disadvantage when compared to the majority of the workforce. Consequently, should equity prevail, this difference must be negated if we are to equate the civil service participant with Social Security participants. In this case, I can't say it any better. Counsel, you argue that, citing language from the court, that the Supreme Court said we leave the resolution of that issue for another day. Why shouldn't we leave it for the Supreme Court to resolve that issue, as opposed to this court guessing or foreseeing it or the like? If we were to affirm, you could file a petition for the Supreme Court and make the same arguments that you wish. They are the final arbiter of judicial policy in the state, not this court. It very well may be decided by the Supreme Court. When there's an open invitation like that in an opinion, that's most often what happens, is they'll rule on it one way or another. That being stated, the legislature, under Section 503 of the Marriage and Disillusion Act, says that you have to make a fair and equitable distribution of the property. It would be my argument that to... Well, we can't do that contrary to federal law, if that's what the Supreme Court of Illinois says federal law says. But you can also point to other Supreme Courts in a number of other states that have said it's not a violation of federal law. That's why the Supreme Court of Illinois needs to be the arbiter of this matter, not this court. Aren't the Social Security protections essentially stating these are non-marital? It's non-contractual legislative pronouncement that you get these benefits. They aren't marital. That is without a doubt true. If they're non-marital, then how do you come to the offset? Again, this isn't an offset. I think that's the genius of this, is that it's not an offset. That's where other plans, like the Crook plan, ran into problems, because it was a direct offset, like we do in Illinois with all kinds of divorce. This is a valuation of one party's pension benefits based on not receiving Social Security. Right. Well, you're right. I'll buy that, that it's not an offset. But it is an attempt to alter. You made the point she'll get everything that she's entitled to, so it doesn't alter her benefit. And not only that, but in this case you have to look in total, and maybe I'm remiss for not describing, in this case she's getting the house, she's getting all of my clients 401K, she's getting a brand new car, she's getting... Well, that really isn't an issue, is it? No, but she's getting a tremendous amount of property, plus she gets to shield. She's saying, nope, nobody can take a look at my Social Security. And we didn't look at her Social Security. Her Social Security was not in any way valued. We don't know what the amount is. It's hers and she can keep it. If you decide this under Section 407A of the Social Security Act, that's what Congress says we can't touch. That's the federal preemption. Those, as discussed in Herald by the Oregon Court, state law on family law is presumed to be basically immune from preemption unless there's a very strong case that Congress has overridden this. In this case, Congress has said that execution, levy, attachment, and garnishment. We're not doing any of those things here. Or other legal process. Well, but again, other legal process is... Should be in the same realm as the specifics of the earlier. Right. Let me ask you a question. You choose employment in part, or you should choose employment in part, though probably most people don't do that when they're younger, based upon all the benefits that you'll receive. You know if you enter into one of these government plans, the same way that we, we're not going to get Social Security unless we qualified for it prior to taking the bench or prior to entering into one of those jobs. That's known. And the law is known regarding what status the Social Security benefits of your spouse may be. Why isn't that just the way it is? And I understand the equitable argument, but it's... You signed up for it. But you also signed up in many of these cases. It's not... People that are really getting hammered by this are public servants. People who... You know, there's people in this room that gave up lucrative careers in the law to become a judge and serve the public. You probably... They must be referring to you. I don't want to point at anybody, but that is... My client is a police officer. He has the downside of having to wear a gun on his hip to his job because he may have to use it in protecting the public. And so while you may choose it, that's true, nobody is forced in this country to work anywhere. The inequity of one party, again, to be able to stand back and... And what Harold... And this is a direct quote in that case. What the husband was saying is, what is mine is mine and what is hers is half mine. It's just not fair and reasonable under any scheme that you can look at. And all we're trying to do is level the playing field. Why have only a minority of states adopted your viewpoint? When you practice in the circuit court, do a lot of divorce work, I think the state of mind is, you hear the word social security and everybody goes, nope, can't touch that. Just can't do it. I think that's the mindset. If you read the decisions of all the different courts who have put a sample of approval on this evaluation technique, they're all long, detailed, psyched to all the constitutional law. If you look at the cases on the other side, one of them has got one paragraph on this issue and it's not very well reasoned. Eventually, Congress may decide to legislate concerning this issue. But as a lot of things in life, if we have to wait for Congress, that's, you know, talk about speculative. And so I think what it is, is these courts have seen the inequitable nature of this. Somebody in Cornbleth came up with a brilliant plan, and I should have the individual's name, because it's some real thinking that was put into this, and has come up with a plan that's fair and equitable, and we'd ask this court to adopt it. Thank you. You'll have additional time to rebuttal. Thank you. Blackburn? May it please the Court, Counsel. Your Honors, today, before this Court, are two issues. One, of course, which is a minor issue when you compare the two to one another, and that is the exclusion of the evidence concerning Mr. Mueller's anticipated hypothetical, however you want to couch it, social security benefits that he is not going to receive, because he did not pay into social security, except for, I believe, he's had a very minor amount of off-duty work that he pays into social security for. So he will have those benefits, but none other. When this issue was presented at trial to Judge Madonia, there was an objection when Ms. Mack, the expert for Mr. Mueller, was on the stand concerning the relevancy of the ability to present any evidence concerning hypothetical social security benefits that she had calculated Mr. Mueller would have received had he paid into social security. I objected as to relevancy. The Court took, actually, a brief recess, because the Court was not familiar with the Crook case, took it in chambers, reviewed the Crook case, and after reviewing the Crook case, determined that, indeed, any evidence concerning hypothetical social security benefits was not appropriate, not relevant, and therefore excluded that evidence from being presented. Ms. Moran is correct, though, is he not, that but for Section 407A of the Social Security Act, the Supreme Court's holding in Crook, his client would be entitled to an evaluation as he requested. Simple as a matter of simple fairness. Evaluation of his social security benefits, sir? Well, I mean, the whole... He'd be entitled to have the trial court evaluate the party's property as he requested. Oh, absolutely, he would be, because the Court is obviously obligated to consider all marital property and put evaluation on all of that marital property. The big issue in this case, and I disagree with Mr. Moran that this is different somehow from Crook. This case really is no different from Crook, with the exception of whose social security benefits we're actually putting value on. My question, though, is, is fairness argument would prevail in the trial court were it not for the statute in the Crook case? The presentation of that evidence would have come in, yes. Whether or not it's fair, I disagree with the argument that it is fair. Well, what's mine is mine, and what's yours is half mine, is his argument, isn't he right? No, he's not correct, because this case, and that's the problem with Kornblath, which I was going to get to. The problem with Kornblath, Kornblath, you know, Mr. Moran calls it brilliant. I call it anything but brilliant. It is very rigid. It is very inflexible. It is literally, we're going to estimate what your social security benefits would have been had you paid into social security, and we're going to discount your pension by exactly that amount without any sort of consideration as to the facts in this case. For instance, in this case, Mr. Mueller is going to be eligible for retirement from the city of Springfield and collect his full retirement benefit at the age of 50, three years from now. My client will not be eligible to collect her social security benefits, if there are any at the time, for 17 years after that date. So for 17 years, Mr. Mueller is going to collect the entirety of his pension. But these facts are incidental in all matters which the trial court may take into consideration if it weren't otherwise barred by Crook in the section. But the fact is, it is barred. I mean, the Supreme Court of Illinois says it can be barred. But the fairness idea isn't diminished by the fact that it might be 17 years. If it were some asset other than social security, trial judges do this all the time. Right, if it was some asset other than social security. But you can determine present values on social security. You can determine present values on pensions, right? But we can't determine a present value on social security because his squadro says we can't. Well, okay. The Supreme Court revisits it for another day. But I'm just trying to get you to acknowledge his fundamental argument on fairness is correct. If this were any other kind of an asset than social security, it would be thrown into the mix. I don't disagree with that, but it's not. And that's the big issue here. The big issue here is federal law prohibits it. His squadro was very, very clear that this isn't just about attachment. This isn't just about garnishment. This is literally about you may not do anything. Offsets, you may not consider. You may not do anything like that. I take it you're not persuaded by the Oregon Supreme Court analysis. I am absolutely not persuaded by the Oregon Supreme Court. And I'll tell you why. First of all, it's not analogous to this case at all, in my opinion. And it actually, the Oregon Supreme Court actually says they're not accepting corn bluff. They don't think corn bluff is the way evaluation should be done. And I can only assume that there is some sort of provision in their law that says that things get evaluation put on them and then there's a just and proper stage of their analysis because that's what they say. They say, unlike what corn bluff did, we are not putting a value on it at the valuation stage, but once we get to the just and proper stage, then we're going to consider it. So they out and out refuse to acknowledge that corn bluff is any sort of precedential law as far as they're concerned out in Oregon. In addition to that, the case in Oregon is not similar to this case at all. You have two parties in Oregon who are federal employees, both retiring, I think they were within a year or two age-wise of each other, both going to retire at the same time. So there's no question about who's going to be receiving what kind of money when retirement age comes because they're both going to retire at relatively the same age. And I believe, if I recall correctly, they're even going to have relatively similar incomes when they do actually retire within a very small amount of money of each other, which is certainly not the case here because under Mr. Mueller's position, and he wasn't terribly clear about it in his brief, but in his closing argument, he argued for a certain percentage for my client. And in this court, he's saying basically that his valuation should drop to basically where 62, I believe, percent of his pension is all that will be of that 62 percent, which for then 17 years is going to leave him with a very sizable pension benefit and my client with no pension benefit or very small amount of pension benefit. Aside from that, there is this issue that I brought up in my brief, which I realize is speculation, but frankly we're doing a whole lot of speculation here. We're speculating about whether Social Security is going to be around in 17 years or not, or if there's going to be any changes to it in the next 17 years. But at age 50, he's going to retire. And in all likelihood, he is going to obtain other employment that may or may not allow him to pay into Social Security. And if it does, he is going to have a Social Security benefit out there for himself when he becomes 67 years of age as well, which I think should not be lost on this court because, you know, when we're speculating so far in the future, I mean, right now we're trying to figure out whether or not Social Security will even be around to be of benefit to any of these people. The only thing we know for sure right now is this pension exists and this pension has a value and we've all agreed on the ultimate value of it after Judge Madonia instructed Ms. Mack to redo her valuation and take out the Social Security issue. And so we all agree it's an asset and this is the value of it. Everything else at this point is a hypothetical. Hypothetically, she is going to have a Social Security benefit, Ms. Mueller, when she retires. And hypothetically, Mr. Mueller may also have a Social Security benefit when he retires. We just don't know that at this point. And to me, that's the ultimate problem in this case. I mean, we're asking the court to pretend that Mr. Mueller has a Social Security benefit which he doesn't have. So we're basically asking the court to put a value on an asset that doesn't really even exist. And at least at this point in time, at no point in time in the future, does it appear that it's going to exist. And I don't know how in the statute, where there's a provision in the statute that allows anybody to place a value on something that doesn't exist. You know, I liken it, frankly, to someone coming in who has a family, comes from a family of some sort of substantial wealth, and someone coming in and making the argument that, well, as this person's child, they may some point in time be in the future, mom and dad are going to die, and right now mom and dad are worth a million dollars, and so she may get a million dollars at some point in time in the future, even though there's no estate plan, even though there's nothing to say that she will actually get that money. So that, to me, is like what we're trying to do here. We're trying to pretend that there's an asset that, frankly, just doesn't exist. And I think the courts that have evaluated this, other than Kelly, and I believe Walker, and Kornbleth, and of course now the court out of Oregon, have been very clear that they believe Escuardo got it right in saying federal law prohibits Social Security from being considered as an offset or as a direct, either a direct, either taking it directly from there or offsetting it against some sort of other marital assets. That's exactly what Crook said here, and while Crook, I agree, left a very small window open because nobody came into the Supreme Court and argued about Kornbleth and Walker and Kelly. They left that window open that if somebody wanted to come back and argue those cases at some point in time in the future, then potentially they would be inclined to hear those arguments. But up to this point, nobody has done that, and I would suggest to you that Kornbleth and Kelly and Walker have been heavily, heavily criticized by many, many, many courts, and I even cited to some of those courts in my brief, which I believe included a number of jurisdictions, New Jersey, Tennessee, Ohio, Florida, Arkansas, Nebraska, South Dakota, Delaware, Rhode Island, and Washington. And while I acknowledge that the majority of those are appellate courts, I believe there's one, I believe Skelton is a Supreme Court case out of Arkansas, the remainder of them are appellate court cases, but they certainly have good rationale for the reasons that they are ruling that they do not believe that Kornbleth, Kelly, and Walker are in any way controlling, including the Supreme Court of New Jersey, which in Hayden said, Hayden v. Hayden said, the fact that a plaintiff will not receive Social Security benefits now does not mean that a plaintiff will not actually receive Social Security benefits upon retirement based upon other employment, either during his state police career, because that dealt with the state police officer, or thereafter. So, much like in this case, when Mr. Mueller retires at 50, none of us really know what is going to be happening with him up until he reaches retirement age, and much like us speculating about what could have happened, what should have happened, what the plan was when they got married, I mean, I agree with you Justice Kinnick, I assume everybody here had a plan. They got married, he becomes a City of Springfield police officer, everybody knows he's not going to have Social Security benefits, and everybody plans their life, meaning Mr. Mueller and his wife, they plan their lives knowing that there's going to be no Social Security benefits for him, and there are going to be for her. Now, because whatever changed in their lives, in their marriage, that plan has now changed, and they're no longer going to be a couple, but it's not just Mr. Mueller that is losing out on that expectation that there was going to be this retirement account, and he was going to have Social Security benefits for the rest of his life. Ms. Mueller's losing out too. Ms. Mueller believed when they all started out down this path of marriage, that he's going to become a City of Springfield police officer, he's going to have this pension, we're going to live happily ever after, and she, I assume there was a retirement plan that included his pension and her Social Security all being part of the pot when everybody retired to live happily ever after. That didn't happen. And, you know, we can't change the fact that that didn't happen, but the bottom line is the federal law is written in a particular way, and in that particular way it absolutely prohibits any sort of consideration or offset with regard to the Social Security benefits. Now, in addition to Hayden, there is also the case of Raymond versus Raymond out of the Court of Appeals out of Tennessee, and in that case they said if Social Security cannot be considered a marital asset, then the lack of Social Security should not be considered in the reduction of marital assets, which is precisely what Mr. Moran is asking that this Court do, is that the fact that there is no Social Security, he wants that to be considered in reducing the value of this pension to a point that he believes is fair and equitable to his client. In addition to that, there is Johnson versus Johnson, which is from the District Court of Appeals in Florida, and in that case they said they rejected the holdings in Kornbleth, Kelly, and Walker, holding that the federal statute not only prohibits the outright division of Social Security benefits, it also prohibits the indirect division of benefits by awarding a non-participating spouse other marital property to compensate for his or her theoretical share of the participating spouse's benefits. All of these cases, Your Honors, that are being cited by myself, reject Kornbleth, reject Kelly, reject Walker, find them to be not in compliance with the holding in Hisquarto, or in compliance with federal law, and based upon those cases, based upon N. Ray Crook, my client is asking that this court affirm the decision of the trial court. Thank you. Thank you. Rebuttal, Mr. Moran. Thank you. Just a couple of real quick points. The Tennessee decision, Ryman, R-E-Y-M-A-N-N, if you look at that decision, there is really no reasoning in there. The Tennessee court simply says we disagree with Kornbleth, then they base their decision on a pellet decision from Oregon, the Swann case, which in Herald that just came out, they said no, Swann is being read too widely. Therefore, the Tennessee case falls out. The Arkansas case, the real question decided in that case, the fireman at issue was trying to argue that his entire pension was not marital property in the first place and should not be subject to being distributed in a dissolution of marriage proceeding, because it was like Social Security and should be totally exempt. Therefore, the Arkansas case falls out. As far as Kornbleth is concerned, Ms. Blackburn said that Kornbleth is rigid. Well, in this case, Ms. Mueller's presentation to the court was she stuffed the numbers into FinPlan, a number got spit out, and said that's what we should live with and that's what Mr. Mueller should live with. If that's not rigid, I don't know what is. There has to be some defining moment, and obviously the court could consider other issues in making its distribution of property. We're not saying that they can't. As far as other employment in the future, speculative in Illinois, we usually require property to be valued at the time of judgment. That's why we have present values, so that we can do this. I don't think the court can speculate. In this case, again, I think the issue is fairness. I think my client's arguments are clearly set forth, and we would again request that you look at this, look at the Oregon decision, and make a decision that's just and equitable. Thank you. Thank you. We'll take this matter under advisement. Stand in recess until the readiness of the next case.